IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| AMPRATWUM EMMANUEL OHENE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-869 (RDA/JFA) |
| | ) | |
| KIMBERLY ZANOTTI, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on the Motion for Summary Judgment brought by Ampratwum Emmanuel Ohene ("Petitioner") and on the Motion for Summary Judgment brought by Merrick Garland, Alejandro Mayorkas, and Kimberly Zanotti, in their official capacities ("Respondents"). Dkt. Nos. 31; 40. The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition.

Considering Petitioner's Motion for Summary Judgment (Dkt. 31), Petitioner's Memorandum in Support (Dkt. 35), Respondents' Motion for Summary Judgment (Dkt. 40); Respondents' Memorandum in Support (Dkt. 41), Petitioner's Memorandum in Opposition (Dkt. 49), and Respondents' Reply (Dkt. 53), it is hereby ORDERED that Respondents' Motion for Summary Judgment is GRANTED and it is further ORDERED that Petitioner's Motion for Summary Judgment is DENIED. For the reasons that follow, judgment must be entered against Petitioner's claims because Petitioner has failed to establish a genuine issue of material fact.

I.  BACKGROUND

A.  Factual Background

Although the parties dispute certain facts, the following facts are uncontested except where noted.  *See* Dkt. 35 at 2-3; Dkt. 41 at 8-10; Dkt. 49 at 2-3.

Petitioner is a native and citizen of Ghana who applied to become a permanent resident of the United States in 2009 through the United States Diversity Visa Program ("DVP").  Dkt. 23 ¶ 9.  Petitioner completed an electronic Diversity Visa entry form ("eDV") as part of his entry into the DVP.  *Id.* ¶¶ 2-5, 8-10.  At the time Petitioner completed his application, he was not married but had a girlfriend and three children: one born in 1999, one born in 2002 and one born in 2004.  *Id.* ¶ 9; Dkt. 23-10; Dkt. 23-11; Dkt. 23-12.  The eDV Petitioner submitted to the Department of State did not list that he had any children.  Dkt. 29-1 at 15.  On November 25, 2009, Petitioner married his wife "but did not register the children's births with the birth registry" in Ghana.  Dkt. 23 ¶ 10.  In 2010, Petitioner was informed he had won the lottery and was now eligible to apply to become a lawful permanent resident of the United States.  Dkt. 23 ¶ 11.

The visa agent who notified Petitioner he had won the lottery also informed Petitioner that he could "go to a travel agency and pay them money to complete the Form DS-230" ("DS-230"), which was the standard application for obtaining an immigrant visa.  *Id.*  The travel agency completed Part I of Petitioner's DS-230 in September 2010 and Part II in March 2011, and Petitioner affirmed that his DS-230 that his responses were "true and complete to the best of [his] knowledge and belief."  Dkt. 29-1 at 9-12.  In 2011, Petitioner attended two interviews with a consular officer at the U.S. Embassy in Ghana.  Dkt. 23-2 ¶ 8.  During those interviews, Petitioner "did not inform the officer about the children" but in the second interview, Petitioner did provide his marriage certificate.  Dkt. 23 ¶ 12.  On September 20, 2011, Petitioner was approved to receive

a diversity visa and was admitted into the United States as a permanent resident.  Dkt. 23-1 at 2; Dkt. 23 ¶13.  Petitioner became eligible to apply to become a naturalized citizen of the United States five years after he began residing continuously as a permanent resident.  8 U.S.C. § 1427(a).  In October 2016, Petitioner submitted his Form N-400 ("N-400") to become a naturalized citizen and in that application, he identified his three children.  Dkt. 30-1 at 17-18.  In that application, Petitioner also attested under penalty of perjury that all information he provided was "complete, true, and correct" and that he had never "given any U.S. Government officials any information or documentation that was false, fraudulent, or misleading."  *Id.* at 23, 25.

After submitting the N-400, Petitioner interviewed with a USCIS officer on two occasions, first on April 24, 2017 and then on September 13, 2017.  Dkt. 23 ¶ 15.  Under sworn statement, Petitioner answered "No" when asked if "anyone help[ed] [him] fill out this form."  Dkt. 30-1 at 35.  The officer also asked Petitioner why he had not disclosed his children on the DS-230.  *Id.*  at 36.  Petitioner responded that "because the customary rites" of his marriage were not completed at the time of submitting the form, he "would not claim them as [his] children on the form unless [h]e did a DNA test" and that he "did not have enough money to do a DNA test at that time."  *Id.*

Following these interviews, USCIS denied Petitioner's application on November 28, 2017 because Petitioner made a material misrepresentation to the USCIS.  Dkt. 23 ¶ 16; Dkt. 29-1 at 63.  On December 29, 2017, Petitioner filed a Form N-336 to request a hearing on that decision.  Dkt. 23. ¶ 17.  Petitioner then appeared for an interview at the USCIS Washington Field Office on April 22, 2018.  *Id.* ¶ 18.  On April 2, 2020, USCIS affirmed its denial of Petitioner's N-400.  *Id.* ¶ 19.

### B.  Procedural Background

On July 30, 2020, Petitioner filed a *pro se* Petition for Review ("Petition").  Dkt. 1.  Petitioner then obtained legal representation and, with the Court's permission, filed an Amended

Petition.  Dkt. Nos. 22; 23.  On February 1, 2021, Respondents filed their Answer to the Amended Petition and the parties jointly filed a motion to set the briefing schedule.  Dkt. Nos. 25; 26. Respondents then filed a two-volume administrative record on February 12, 2021.  Dkt Nos. 29; 30.  Petitioner filed his Motion for Summary Judgment and supporting brief on March 12, 2021. Dkt. Nos. 31; 35.  On April 9, 2021, Respondents filed a cross-Motion for Summary Judgment and their supporting brief and noticed the motion for hearing.  Dkt. Nos. 40; 41; 42.  On May 14, 2021, Petitioner filed his Opposition to Respondents' Motion for Summary Judgment and Respondents filed their Reply on May 26, 2021.  On June 16, 2021, the Court granted all deadlines outlined in the proposed joint briefing schedule such that Respondents' Reply was considered timely filed. This Court terminated the hearing on October 4, 2021 and took both parties' motions under advisement.

## II.  STANDARDS OF REVIEW

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate only if the record shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 615 (E.D. Va. 2014) (quoting Fed. R. Civ. P. 56(a)).  In an appeal of a USCIS decision denying a petitioner's application to become a naturalized American citizen, when the parties do not dispute the material facts underlying the denial, "summary judgment is the appropriate vehicle for review of USCIS's decision." *Rodriguez v. U.S. Citizenship & Immigr. Servs.*, No. 15-CV-1639, 2016 WL 2894912, at *3 (E.D. Va. May 16, 2016) (quoting *Phan v. Holder*, 722 F. Supp. 2d 659, 661 (E.D. Va. 2010)).

"A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Hantz*, 11 F. Supp. 3d at 615-16 (quoting *Spriggs v. Diamond*

4

*Auto. Glass*, 242 F.3d 179, 183 (4th Cir. 2001)).  The moving party bears the "initial burden to show the absence of a material fact." *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  "Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

On summary judgment, a court reviews the evidence in the light most favorable to the non-moving party. *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)).  Here, Petitioner and Respondents have each filed cross-motions for summary judgment.  Therefore, "we consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007) (internal quotation marks omitted).  Moreover, in considering the motion for summary judgment filed by Petitioner, the facts and all reasonable inferences are accordingly drawn in Respondents' favor. On the other hand, in considering the motion for summary judgment initiated by Respondents, the facts and all reasonable inferences are accordingly drawn in Petitioner's favor. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 570 (4th Cir. 2015) (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)).  This is a "fundamental principle" that guides a court as it determines whether a genuine dispute of material fact within the meaning of Rule 56 exists. *Id.*  "[A]t the summary judgment stage[,] the [Court's] function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

A factual dispute alone is not enough to preclude summary judgment.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. And a "material fact" is one that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). The substantive law determines whether a fact is considered "material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material fact" arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 248.

In civil actions brought pursuant to 8 U.S.C. § 1421(c), involving the appeal of a determination made by the United States Civil Immigration Service ("USCIS") as to the denial of an application for naturalization, "a district court is empowered to conduct a *de novo* review of the record, to hold evidentiary hearings, and to make additional factual findings." *Hassan v. Johnson*, 93 F. Supp. 3d 457, 461 (E.D. Va. 2015) (quoting *Nesari v. Taylor*, 806 F. Supp. 2d 848, 860 (E.D. Va. 2011)). "An applicant seeking to obtain the privilege of United States citizenship bears the burden of proof to establish that he or she is eligible for naturalization." *Nesari*, 806 F. Supp. 2d at 862. Therefore, courts may "confer citizenship only in strict compliance with the terms of an authorizing statute." *Cody v. Caterisano*, 631 F.3d 136, 142 (4th Cir. 2011) (internal quotation marks omitted) (quoting *Immigr. & Naturalization. Serv. v. Pangilinan*, 486 U.S. 875, 884 (1988)).

## III.  ANALYSIS

Given the factual record on summary judgment, it is necessary to determine whether summary judgment is appropriate as to Petitioner's and Respondents' claims.

The applicant carries the burden of showing, by a preponderance of evidence, "his eligibility for citizenship in every respect," and any "doubts" regarding the applicant's eligibility

for naturalization "should be resolved in favor of the United States."  8 C.F.R. § 316.2(b); *Berenyi v. Dist. Dir., Immigr. & Naturalization Serv.*, 385 U.S. 630, 637 (1967).[1]  That burden requires that the applicant show he "has been lawfully admitted to the United States for permanent residence" in order to become a naturalized American citizen.  *See* 8 U.S.C. § 1429.  The term "lawfully" "denotes compliance with substantive legal requirements, not mere procedural regularity."  *In re Koloamatangi*, 23 I. & N. Dec. 548, 550 (B.I.A. 2003) (internal quotation marks omitted); *see also Injeti v. U.S. Citizenship & Immigr. Servs.*, 737 F.3d 311, 316 (4th Cir. 2013) (adopting the B.I.A.'s view of "lawfully" as reasonable).  The permanent resident applicant "must do more than simply show that [he] was granted [permanent resident] status; [he] must further demonstrate that the grant of that status was 'in substantive compliance with the immigration laws.'"  *Injeti*, 737 F.3d at 316 (footnote omitted) (quoting *Shin v. Holder*, 607 F.3d 1213, 1217 (9th Cir. 2010)).

---

[1]  While Petitioner argues Respondents carry the burden of proving inadmissibility by "clear, unequivocal and convincing evidence," Petitioner's reliance on *Kungys v. United States*, 485 U.S. 759, 771-72 (1988) is of no moment.  Dkt. 35 at 4-5.  *Kungys* involved *de*naturalization proceedings and thus there was very good reason to reverse the burden in that case.  As the Supreme Court explained in *Berenyi*:

> When the Government seeks to strip a person of citizenship already acquired, or deport a resident alien and send him from our shores, it carries the heavy burden of proving its case by clear, unequivocal, and convincing evidence.  *But when an alien seeks to obtain the privileges and benefits of citizenship, the shoe is on the other foot.  He is the moving party, affirmatively asking the Government to endow him with all the advantages of citizenship.*  Because that status, once granted, cannot lightly be taken away, the Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship.  For these reasons, it has been *universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect*.  This Court has often stated that doubts should be resolved in favor of the United States and against the claimant.

385 U.S. at 636-37 (emphases added) (internal footnotes omitted) (internal quotation marks omitted).  Petitioner's reliance on *Y-G-* is similarly unavailing given the board's holding that "[t]he burden in exclusion proceedings is upon the applicant to establish that he is not inadmissible under any provision of the [INA]."  20 I. & N. at 797.

As part of carrying his burden to show that his permanent residence status was granted "in compliance with the immigration laws," the applicant must demonstrate his case does not trigger any of the bases of inadmissibility under 8 U.S.C. § 1182.  If the applicant "willfully misrepresent[s] a material fact" in seeking "to procure . . . a visa, other documentation, or admission into the United States or other benefit under [the INA]," he has not established sufficient bases to become a naturalized American citizen.  8 U.S.C. § 1182(a)(6)(C)(i).  Additionally, the applicant may be deemed inadmissible for naturalization if he is in receipt of a visa that has not been issued in compliance with 8 U.S.C. § 1153(f).  8 U.S.C. § 1182(a)(7)(A)(i)(II).  In the event the applicant's visa or other documentation causes the consular officer to believe "from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under [8 U.S.C. § 1182], or any other provision of law" or if "the consular officer knows or has reason  to believe that such alien is ineligible to receive a visa or such other documentation under [8 U.S.C. § 1182], or any other provision of law," the application is inadmissible for naturalization.  8 U.S.C. § 1201(g).

If the court finds the applicant has been lawfully admitted as a permanent resident, the applicant must then prove "that he is of good moral character." *Injeti*, 737 F.3d at 318-19 (finding that a determination of the applicant's good moral character need not be made if the applicant has failed to satisfy "any one of the statutory prerequisites" for naturalization in order to leave the issue open for the applicant in any future applications where character is relevant); *Hassan*, 93 F. Supp. 3d at 462 (internal quotation marks omitted) (quoting *Nesari*, 806 F. Supp. 2d at 863); *see also* 8 C.F.R. § 316.10(a)(1) ("An applicant for naturalization bears the burden of demonstrating that, during the statutorily prescribed period, he or she has been and continues to be a person of good moral character."); 8 U.S.C. § 1427(a)(3) (imposing a residency requirement that, *inter alia*, the applicant "has been and still is a person of good moral character" for five years prior to filing his

application and during entire pendency of his application).  Good moral character is analyzed on a case-by-case basis.  *Iqbal v. Bryson*, 604 F. Supp. 2d 822, 827 (E.D. Va. 2009).  Courts look to the non-exhaustive list of factors evidencing a lack of good moral character enumerated in 8 U.S.C. § 1101(f).  *Id.* at 827-28.  These factors include "giv[ing] false testimony for the purpose of obtaining any benefits" under the Immigration and Nationality Act ("INA").  8 U.S.C. § 1101(f)(6).  Courts also evaluate how the applicant's moral character compares to the "standards of the average citizen in the community of residence."  8 C.F.R. § 316.10(a)(2); *Hassan*, 93 F. Supp. 3d at 462.

For the reasons that follow, this Court finds that Petitioner made willful misrepresentations of material fact in completing his eDV, DS-230 and visa consular interviews and therefore violated multiple provisions of the INA, including 8 U.S.C. §§ 1153, 1182.  Petitioner has also failed to comply with 8 C.F.R. § 103.2(a)(2) in completing his N-400 naturalization application.  Moreover, because Petitioner has failed to satisfy these statutory prerequisites in establishing his eligibility for naturalization, this Court does not make a determination on Petitioner's character.  Petitioner's naturalization application is inadmissible pursuant to the INA and this circuit's case law.

A.  Whether Petitioner Made a Willful Misrepresentation

Petitioner argues that he made no misrepresentation with respect to seeking admission to the United States.  Dkt. 35 at 5-7.  As to his eDV, Petitioner reasons that at the time he completed that form, he was merely seeking to enter the DVP and not to obtain a visa.  Moreover, Petitioner alleges that he had no legal documents affirming that his children were in fact his children at the time he completed his eDV.  Only after entering the United States, in 2016, were the children's births registered.  *See* Dkt. 23-10; Dkt. 23-11; Dkt. 23-12.  Consequently, Petitioner contends that he was under no obligation to list his children on any forms submitted to the USCIS until their births were registered.  Dkt. 35 at 6. And even if his omissions were a misrepresentation, Petitioner

9

further submits that they were not willful because his knowledge as to whether the children were his did not satisfy the BIA's definition of willfulness in the *Matter of G-G-*, 7 I. & N. Dec. 161 (BIA 1956). In that case, the board held that the misrepresentation is willful with "knowledge of its falsity and with actual intent to deceive." *Id.* at 164. Petitioner also cites precedent outside this district that "willful" requires "conscious wrong or evil purpose . . . or at least inexcusable carelessness," making it "an even stronger requirement than voluntary or intentional." *Ampe v. Johnson*, 157 F. Supp. 3d 1, 11 (D.D.C. 2016) (internal quotation marks omitted). Petitioner therefore maintains that he did not willfully misrepresent his biological relationship to his children at the time of his eDV, the subsequent filing of his DS-230, or during his initial interviews with the consular officer in 2011.

Respondents counter that Petitioner offers no authority to support his proposition that without formal birth certificates he was not required to raise the existence of his children at any point during his visa application. Instead, Respondents maintain that the term "children," as it appears on the DS-230, is qualified by the entirely uppercase term "ALL" and therefore is to be "interpreted broadly." Dkt. 41 at 16 (citing *Yemer v. U.S. Citizenship & Immigr. Servs.*, 359 F. Supp. 3d 423, 433 (E.D. Va. 2019)). Moreover, Respondents cite to Fourth Circuit precedent which defines "willful" as "deliberate and voluntary." Dkt. 41 at 17 (citing *Xing Yang v. Holder*, 770 F.3d 294, 303 (4th Cir. 2014)).

This Court agrees with Respondents and finds that Petitioner willfully misrepresented his family information to the USCIS in applying for permanent residency. This Court must apply the "willful" standard as described by the Fourth Circuit in *Yang*. To be clear, that standard is markedly different and less demanding than the deception standard Petitioner submits in the *Matter of G-G-*. Although Petitioner did not obtain legally registered identification of his children at the

time of his application, he was, at minimum, aware of their existence and the distinct possibility they were his biological children. Petitioner's view that he has no responsibility to disclose his children until *he* obtains legal documentation providing as much is an exceptionally wooden interpretation of United States immigration laws. Adopting Petitioner's view is a non-starter and would empower applicants to manipulate the immigration verification process to their liking and timing.

At the time Petitioner submitted his eDV, his children had been alive for between five and ten years. While this Court commends Petitioner in his decision to marry the mother of his children, Petitioner admits that he had no reason to believe the children were not his and that the only reason he did not list them on his eDV was because he had not yet married his now wife. *See* Dkt. 23 ¶¶ 9-10; Dkt. 30-1 at 36 (telling an USCIS officer that he did not list his children in his eDV because, although he was legally married, the "customary rites were not completed"). But "customary rites" in another country hold no weight in determining whether Petitioner has good reason to believe he has biological children. Moreover, Petitioner, under sworn statement, admitted that he was having sexual relations with the mother of his children during the times his children were born and that he had no reason to believe the mother of his children was having "relations with any other man." Dkt. 30-1 at 36. Curiously, Petitioner also admitted in his naturalization interview that he "recognized them as his children" because "[l]ater on they started to resemble [him]." *Id.* However, at the time of his visa application, his children were between six and ten years of age. Petitioner's claim that he noticed that his children suddenly began to resemble him after none of them had resembled him for six to ten years of their lives stretches credulity.

Lastly, this Court finds Petitioner's claim that his eDV was not submitted to procure a visa unavailing.  An eDV represents the first step in seeking to obtain the right to obtain permanent residency via the DVP and constitutes "other documentation" under 8 U.S.C. § 1182(a)(6)(C)(i). *See* 9 Foreign Affairs Manual § 302.9-4(B)(7)(a) ("The 'other documentation' mentioned in the text of [§ 1182(a)(6)(C)(i)] refers to *any document relating* to an *application*, *admission*, grant of deferred action, or any other immigration benefit." (emphasis added)).

There is no dispute as to the material fact that Petitioner was well-aware of the existence of his children at the time of his application process to obtain permanent residency and that he was aware of the likelihood that his children were biologically related to him.  A trier of fact need not require a showing that Petitioner had the necessary *mens rea* to seek to deceive U.S. immigration officials.  Rather, based on the factual record, no reasonable juror could draw any conclusion other than that Petitioner voluntarily and deliberately chose not to disclose his children on his application materials and in his consulate interview before obtaining his visa.[2]  Therefore, Petitioner willfully misrepresented the facts in his visa application.

B.  Whether Petitioner's Misrepresentation Was Material to His Application to Become a Naturalized Citizen

The Court has found that Petitioner willfully misrepresented facts in his visa application. To establish that Petitioner indeed violated the INA in the representations he made on his visa

---

[2]   This Court also notes that Petitioner has displayed a tendency to provide prior inconsistent statements in these proceedings.  Petitioner misrepresented that he received assistance in completing his DS-230 when he told the USCIS he did not receive assistance in completing that form.  *Compare* Dkt. 30-1 at 36 (Petitioner telling USCIS that no one helped him complete his DS-230) *with* Dkt. 23-2 at 3 (Petitioner declaring in his affidavit that a travel agency completed his DS-230).  However, this Court does not find grounds to deem that misrepresentation willful or material without additional evidence.  As discussed *infra*, this Court still finds such statements relevant for conducting an inquiry into Petitioner's moral character.

application process, Petitioner must have made a willful misrepresentation involving a *material* fact.

Petitioner argues that information regarding his children or lack thereof is immaterial to his pursuit to obtain permanent residence in the United States.  Citing *Kungys v. United States*, 485 U.S. 759 (1988), Petitioner maintains that a fact is only material "if by it[,] the foreign national received a benefit for which he or she would not otherwise have been eligible."  Dkt. 35 at 7; *see also Kungys*, 485 U.S. at 772 (adjudging materiality to have a "natural tendency to influence the decisions of the Immigration and Naturalization Service"); *United States v. Garcia-Ochoa*, 607 F.3d 371, 375-76 (4th Cir. 2010) (applying the *Kungys* materiality standard to a criminal case involving a misrepresentation by defendant on his I-9 employment eligibility verification form). Armed with these cases, Petitioner then maintains that having children does not impact the applicant's eligibility to obtain an immigrant visa via the DVP.  And even if his omission was considered a willful misrepresentation, Petitioner submits that the visa review guidelines permit a consular officer to "submit the case for an advisory opinion" if the applicant has failed to comply with the visa application instructions.  Dkt. 49 at 5 (citing 9 Foreign Affairs Manual 42.33, § N6.6(d)).  In other words, because Petitioner's misrepresentation could still theoretically survive review if a consular official decided to punt the decision to the Advisory Opinions Division, the misrepresentation cannot be deemed material.

Instead, Petitioner invokes 22 C.F.R. § 42.33(a)(1)(3) to assert that DVP applicants are only subject to educational, employment, and qualified country requirements as a proxy for determining whether the applicant would be a "public charge"[3] during their residency in the United

---

[3] "Public charge" is used to describe an applicant who, "after admission into the United States, is likely to become primarily dependent on the U.S. Government for subsistence."  9 Foreign Affairs Manual 40.41, § N2.

States.  Dkt. 35 at 8 (citing 9 Foreign Affairs Manual § 302.8-2(B)(3)); *see also* 9 Foreign Affairs Manual § 302.8-2(B)(1)(a) (describing a totality of the circumstances assessment of factors meant to gauge the likelihood of an applicant becoming a "public charge," which include "age, health, family status, assets, resources, financial status, education, and skills").  In applying the factors evaluating whether an applicant is likely to become a public charge, Petitioner highlights that he was an "educated, working professional capable of finding work in the U.S. at the time of his [DVP] application," that he was in "good health" and that he proactively submitted documentation demonstrating this effect.  Dkt. 35 at 9.  As a result, Petitioner asserts that "he would have overcome any notion by an officer that he would become a public charge."  *Id.*

Respondents begin by qualifying the *Kungys* materiality standard with the Fourth Circuit's determination in *Injeti* that materiality "does not require concluding that [the fact] necessarily would have changed the relevant decision."  Dkt. 41 at 17; *Injeti*, 737 F.3d at 316.  Even so, Respondents contend that reviewing officers are required to reject DS-230 applicants who list a "child who was not included in their initial entry [eDV], unless such . . . child was acquired subsequent to submission of [the eDV]."  9 Foreign Affairs Manual 42.33, § N5.1.  Referencing a case with similar facts outside this circuit, Respondents argue that the court denied the petitioner's naturalization application because the "misstatements regarding [the existence of] his wife and children were material because . . . such . . . omission[s] ha[ve] a predictable effect on the decision to grant a diversity visa."  *Ngamfon v. U.S. Dep't of Homeland Security*, 349 F. Supp. 3d 975, 986 (C.D. Cal. 2018) (citing 22 C.F.R. § 42.33(b)(1)(v) and 9 Foreign Affairs Manual 42.33, § N5.1).  Drawing from this precedential well, Respondents maintain that disclosure of children directly impacts a consular officer's decision to deny or approve the visa application.

As to Petitioner's reliance on a consular officer's discretion to seek an advisory opinion before denying an applicant, Respondents highlight that the manual only authorizes an advisory opinion when the applicant does not disclose children on the eDV because those children have not yet been "born" or "acquired."  Dkt. 53 at 5-6 (citing 9 Foreign Affairs Manual 42.33, § N6.6(c)). Further, because Petitioner must demonstrate his lawful permanent residence by a preponderance of the evidence, according to Respondents, mere speculation that Petitioner's application would have been approved by an advisory opinion committee is not sufficient to satisfy Petitioner's burden.  Moreover, Respondents flag that the INA caps the number of diversity visas approved for each fiscal year at 55,000, pursuant to 8 U.S.C. § 1151(e), and that children of an applicant count towards that cap under 8 U.S.C. § 1153(d).  Dkt. 41 at 21-22.  It tacitly follows, Respondents reason, that listing children on a DVP application, be it the eDV or the DS-230, impacts the total number of visas available to grant to another applicant.

As to the "public charge" evaluation, Respondents also note that the presence of children impacts two of the factors that consular officers reference in their application review: "family status" and "financial status."  *Id.* at 22.  In light of these considerations, Respondents argue that the very existence of Petitioner's children would have "tende[d] to influence" the decision in granting or denying his *visa* application process.

This Court finds that Petitioner's failure to list his children in his visa application was a material misrepresentation.  First, the existence of a yearly statutory cap on visa grants suggests that children are material to the grant or denial of a visa application.  22 C.F.R. 42.33(a) further provides that "the eligibility for a visa . . . ceases at the end of the fiscal year in question" and that "[u]nder no circumstances may a consular officer issue a visa or other documentation to an alien after the end of the fiscal year during which an alien possesses diversity visa eligibility."  If, for

example, at the time of Petitioner's application, there were two remaining visas available to issue for the fiscal year, and Petitioner disclosed his three children on his application, he would not be eligible for a visa for that fiscal year and would then be ineligible to carry over his application for the following fiscal year.  Therefore, claiming his children on an application can directly impact whether Petitioner is admitted for permanent residency in a given application season.

This Court is also persuaded that family information is a significant factor in deciding the grant or denial of a visa because of the "public charge" assessment.  The existence of children directly impacts an applicant's "family status" and "financial status."  Each of those factors must be considered in the consular officer's evaluation of whether the applicant is likely to become a "public charge" while residing in the United States.  9 Foreign Affairs Manual § 302.8-2(B)(1)(a).  And a finding that an applicant is likely to become a "public charge" makes that applicant inadmissible for lawful permanent residence.  8 U.S.C. § 1182(a)(4)(A) ("Any alien who, in the opinion of the consular officer at the time of application for a visa, or in the opinion of the Attorney General at the time of application for admission . . . is likely at any time to become a public charge is inadmissible").

Notably, Petitioner eventually elected to disclose his children when he claimed them as his dependents on his N-400.  Considering that children claimed on an application are "entitled to derivate DV status," Petitioner expected his children to join him in the United States.  9 FAM 42.33, § N6.6(c); 8 U.S.C. § 1153(d) (bestowing the same right of admission to spouses and children that a lottery winner receives); *see also Yemer*, 359 F. Supp. 3d at 434 (describing how to hold otherwise would permit an applicant to "circumvent[]" the statutory cap).  Therefore, his children would have impacted his "family status" and "financial status" while living in the United States.  Because Petitioner failed to provide a fulsome picture of integral factors in the "public

charge" determination, he prevented the consular officer from making an accurate assessment of Petitioner's likelihood of becoming a "public charge" while residing in the United States as a permanent resident.  That is a material result in this case.

Lastly, in light of the uncontested facts, Petitioner's reliance on an immigration official's ability to seek an advisory opinion on a matter where the applicant has apparently failed to comply with the application instructions is empty-handed and impractical.  While Petitioner's case may not fit squarely within the field manual's examples, making it certainly possible that the consular could have submitted the case for advisory review, this would not be workable alternative given the facts of this case.  This is because Petitioner *never* disclosed to the consular official the existence of the children so that the official could even make the determination that an advisory opinion would be helpful.  Indeed, because of Petitioner's misrepresentation, the reviewing official had no inkling to believe that another line of review was necessary before approving Petitioner's application.  That fact alone is fatal to Petitioner's attempted legal backstop against any willful, material misrepresentation claim.  This Court therefore agrees that "misstatements regarding [Petitioner's] children were material because . . . such . . . omission[s] ha[ve] a predictable effect on the decision to grant a diversity visa." *Ngamfon*, 349 F. Supp. 3d at 986.

C.  Whether Petitioner's Submitted a Complete, True and Correct N-400 Naturalization Application

Respondents also argue that Petitioner's naturalization application is inadmissible because his N-400 was untruthful in its own right.  Dkt. 41 at 23.  For this proposition, Respondents cite to 8 C.F.R. §§ 335.3(a) and 103.2(a)(2) and this circuit's case law to argue that Petitioner was required "to certify that all information contained in the application [for naturalization] 'is true and correct.'"  *Injeti*, 737 F.3d at 318; *see also United States v. Sadig*, 271 F.  App'x 290, 295 (4th Cir. 2007) ("[T]he oath at the end of the application specifically and absolutely requires that the

answers be true and correct.") Relying on *Injeti*'s construction of § 103.2(a)(2), Respondents assert that any material misrepresentation in the N-400 renders Petitioner's naturalization application inadmissible. As such, Respondents maintain that Petitioner was required to disclose that he had not listed his children in his visa application documentation and interviews, independent of whether Petitioner willfully failed to raise that issue in his initial N-400. Dkt. 41 at 24.

Petitioner suggests that any issues pertaining to the N-400 are beyond the purview of this Court's review because the USCIS decision did not address whether Petitioner's N-400 was "true and correct." Dkt. 49 at 8. Regardless, Petitioner asserts that his N-400 was "true and correct" in all respects. Petitioner further argues he had no obligation to disclose his decision not to apprise the consular officials of his children's existence in the visa application process because "while he was residing in Ghana, [he] did not have evidence of parentage." *Id.* at 10. Lastly, Petitioner argues that an applicant can overcome any deficiencies in his application and that he did so when he provided testimony to the USCIS officer in his 2017 interview. *See id.* at 11 (citing 12 USCIS Policy Manual 3); Dkt. 30-1 at 36. Petitioner offsets his defense with the argument that his statements made in connection with his naturalization application are not for consideration in reviewing the USCIS's determination on appeal.

This Court disagrees and appropriately conducts a *de novo* review of the present petition. Consequently, this Court "is empowered . . . to hold evidentiary hearings, and to make additional factual findings." *Hassan*, 93 F. Supp. 3d at 461 (quoting *Nesari*, 806 F. Supp. 2d at 860). Consideration of the representations made by Petitioner on his N-400 and during his post-N-400 submission interview are well within this Court's rights. Accordingly, this Court assesses the relevant facts related to Petitioner's naturalization application process.

There is no disagreement that Petitioner checked a box on his N-400 affirming that he had not "given any U.S. Government officials any information or documentation that was false, fraudulent, or misleading." Dkt. 30-1 at 23, 25. However, as this Court has already found, Petitioner provided false information on his eDV, his DS-230, and in his visa interview regarding the existence of his three children. Ghanaian parentage laws do not dictate whether Petitioner has the right to become a naturalized American citizen. Petitioner's mere awareness of, at the very least, the potential that such children would be his and more importantly that he would claim them as his dependents at the time of entry into the United States is enough to make the consular official aware of their existence during the visa application process. Despite Petitioner's position that he would not claim the children until they had been confirmed as his own through a DNA test, *see* Dkt. 30-1 at 36, Petitioner claimed the children on his N-400 and provided no evidence that he ever took a DNA test to confirm paternity. Petitioner's ensuing conduct supports this Court's analysis while also casting doubt about Petitioner's representations before the USCIS interviewing officer, namely why he had not listed his children in his visa application.

The Fourth Circuit has made clear that, in meeting the requirements of 8 C.F.R. § 103(a)(2), a material misrepresentation alone on a form submitted to the USCIS "d[oes] not satisfy the legal requirements" for becoming a lawful permanent resident. *Injeti*, 737 F.3d at 318. This Court also recently held that a naturalization applicant's failure to identify their child in the DVP process required that they select the box in the N-400 that they had previously provided false information to federal officials. *See Yemer*, 359 F. Supp. 3d at 430-31. Although the facts in *Yemer* slightly differ from Petitioner's in that the applicant in *Yemer* was a mother rather than a father to previously unclaimed children, this Court's decision highlighted how "[the petitioner's] knowledge [of their children] is apparent from the fact that [the petitioner] listed [their child] on

19

[their] Form N-400," which "indicates that, by the time of [the petitioner's] naturalization application, [the petitioner] was aware of [their] obligation to report [their children]" and "thus was aware . . . that [they] had denied having children during the visa application process." *Id.* at 431 nn. 10-11. By listing his three children on his N-400, Petitioner confirmed his awareness of them as his children.

Petitioner justified his decision to list the children, not because of the results of a DNA test, but because their births had finally been registered in Ghana and his marriage had been legitimized under Ghanaian law. But Petitioner provides no support under U.S. immigration law allowing him to predicate his decision to list his children in his application based on whether and when his children's births have been registered in the applicant's home country. Rather as this Court has already made clear, in the naturalization context, the term "children" is construed "broadly" on the DS-230. *Id.* at 433. As is the case here, the applicant in *Yemer* attempted to waive the obligation to list children if they were born out of wedlock, and yet the Court still applied a broad-sweeping definition of children in evaluating the application's representations before U.S. immigration officials. *Id.* at 433-34.

To that end, the factual record is unmistakable—Petitioner represented under penalty of perjury to the USCIS that he had *not* previously provided false, fraudulent or misleading information. Yet Petitioner was in fact very much aware, at the time of his visa application, of the existence of his children whom he did not previously disclose to the consular officials in his eDV, his DS-230, or during his visa interviews. Without needing to determine whether Petitioner was willful in checking the box that he had not provided any false, fraudulent, or misleading information, making that material misrepresentation alone is a flagrant violation of 8 C.F.R. §

103.2(a)(2).  *Injeti*, 737 F.3d at 318.  As such, he should have acknowledged he had provided false information in his visa application.

Because Petitioner must satisfy the preponderance of the evidence standard, Petitioner's reliance on the USCIS manual's curing provision is also unavailing.  Petitioner must prove that it was more likely than not that the USCIS would cure his material misrepresentations in light of the responses he provided in his naturalization interview after having submitted his N-400.  While "[t]he written record includes any amendments to the responses in the application that the officer makes in the course of the naturalization interview as a result of the applicant's testimony," the USCIS did not schedule the applicant for a subsequent re-examination.  *See* 12 USCIS Manual 3(C)-(D).  And even if they had done so, it is merely speculative to suggest that the re-examination would make any revised findings or determinations.  Speculation does not satisfy a preponderance of the evidence standard.  *See, e.g.*, *Scott v. Cricket Comms., LLC*, 865 F.3d 189, 197 (4th Cir. 2017) (distinguishing speculation from more likely than not).

Therefore, there is no dispute as to material fact that Petitioner's material misrepresentations in his N-400 and in his naturalization interview provide additional grounds for his inadmissibility to become a naturalized American citizen.

### D.  Whether Petitioner Can Be Considered a Person of Good Moral Character Good Moral Character

Respondents also argue that should the Court determine Petitioner were lawfully admitted as a permanent resident and accurately completed his N-400, he nonetheless lacks good moral character, and that such a finding would independently entitle Respondents to summary judgment. Dkt. 41 at 25-28.  But in *Injeti*, the Fourth Circuit vacated the district court's judgment to the extent it decided the issue of the petitioner's good moral character after the district court had already determined that the petitioner had been unlawfully admitted.  737 U.S. at 318; *see also id.* ("[A]

failure to satisfy any one of the statutory prerequisites renders an applicant ineligible for naturalization." (citing *Fedorenko v. United States*, 449 U.S. 490, 506 (1981))).  To be sure, this Court has held that summary judgment must be granted in Respondents' favor because Petitioner had not been lawfully admitted for permanent residence and because Petitioner had not submitted a "complete, true and correct" N-400 naturalization application.  This Court expressly declines to reach the question of Petitioner's good moral character "in light of the possibility that [he] might, in the future, seek immigration benefits to which [his] character is relevant."  *Injeti*, 737 F.3d at 318-19.

## IV.  CONCLUSION

Admission as a United States citizen is perhaps the greatest privilege afforded to immigrants in this country.  Those applying for citizenship are expected to complete their applications for residency and naturalization with the utmost care, attention, and candor.  For the reasons set forth above, it is hereby ORDERED that Respondents' Motion for Summary Judgment (Dkt. 40) is GRANTED; and it is

FURTHER ORDERED that Petitioner's Motion for Summary Judgment (Dkt. 31) is DENIED.

The Clerk is directed to enter judgment for Respondents pursuant to Federal Rule of Civil Procedure 58 and close this civil action.

It is SO ORDERED.

Alexandria, Virginia
February 16, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge